IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASTON KAFUTWA | : CIVIL ACTION |
| v. | : |
| SOLICITOR GENERAL SECRETARY FOR JUSTICE | : NO. 13-147 |

MEMORANDUM

YOHN, J.                                           MARCH 11th, 2013

Currently before the Court is plaintiff Laston Kafutwa's amended complaint against the Solicitor General of Malawi and the Secretary for Justice of Malawi. Plaintiff claims that he was tortured and that his wife was killed by government officials in Malawi several decades ago. For the following reasons, the Court will dismiss the amended complaint without prejudice to plaintiff's filing a second amended complaint.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff's initial complaint in this action alleged that he was tortured in Malawi for eight years beginning in January 1969, and that government officials "contributed to the death" of his wife. (Compl. ¶ III.C.) After granting plaintiff leave to proceed *in forma pauperis*, the Court construed the complaint as raising claims under the Torture Victim Protection Act of 1991 ("TVPA") and dismissed the complaint because it failed to describe a basis for the defendants' liability, failed to allege facts establishing an extrajudicial killing, and because it appeared that plaintiff's claims were time-barred. Plaintiff was given leave to file an amended complaint.

1

In his amended complaint, plaintiff again alleges that he was arrested by the Malawi Government Special Branch on January 22, 1969, because he was believed to be a rebel planning to overthrow the government. He was transferred to various detention camps, where he was detained for eight years, during which he was confined to a cell, chained to a wall, and beaten by prison guards. Plaintiff explains that, during this time period, a group called the Young Pioneers, who served as body guards to then president Kamuzu Banda of the Malawi Congress Party, would kill those suspected of being against the government and take their property.[1] Plaintiff asserts that, while he was detained, individuals in the Young Pioneers beat his wife to death because she visited him during his detention.

Plaintiff was released from detention in March of 1977. Less than two weeks later, he learned that the Young Pioneers were looking to kill him. He fled and was eventually granted asylum in the United States in late 1981. Since 1982, and certainly since 1994 when he first heard of the TVPA, plaintiff has been seeking monetary compensation from the Malawian government in connection with the torture that was inflicted upon him. He has contacted the Malawian Embassy in Washington, D.C., and has submitted a claim to the National Compensation Tribunal in Malawi, but his efforts have thus far been unsuccessful. On

---

[1] Banda ruled Malawi from 1961 to 1994. He passed away in 1997. See Donald G. McNeil Jr., Kamuzu Banda Dies; 'Big Man' Among Anticolonialists, N.Y. Times, Nov. 27, 1997, at B15.

2

January 9, 2013, plaintiff filed this lawsuit seeking $10 million.

## II.  STANDARD OF REVIEW

As plaintiff is proceeding in forma pauperis, 28 U.S.C. § 1915(e)(2)(B) applies.[2] That provision requires the Court to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted).

## III. DISCUSSION[3]

As with the initial complaint, the Court understands the amended complaint to to raise claims under the TVPA. See 106 Stat. 73, note following 28 U.S.C. § 1350. The TVPA provides a cause of action for damages against "[a]n individual who, under

---

[2] In his amended complaint, plaintiff indicates that he does not want to proceed in forma pauperis and that he is willing to pay the filing fee. However, as he has been granted in forma pauperis status, and as he has not paid the filing fee, the Court is obligated to screen his complaint pursuant to 28 U.S.C. § 1915(e).

[3] The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Foreign Sovereign Immunities Act does not preclude jurisdiction here. Samantar v. Yousuf, 130 S. Ct. 2278, 2282 (2010).

actual or apparent authority, or color of law, of any foreign nation" subjects another to torture or extrajudicial killing.[4] Id.; Mohamad v. Palestinian Auth., 132 S. Ct. 1702, 1705 (2012). In Mohamad, the Supreme Court held that the term "individual" as used in the TVPA refers to natural persons. 132 S. Ct. at 1707-08.

Further guidance on the scope of liability under the TVPA can be gleaned from the statute's legislative history:

> The legislation is limited to lawsuits against persons who ordered, abetted, or assisted in the torture. It will not permit a lawsuit against a former leader of a country merely because an isolated act of torture occurred somewhere in that country. However, a higher official need not have personally performed or ordered the abuses in order to be held liable. Under international law, responsibility for torture, summary execution, or disappearances extends beyond the person or persons who actually committed those acts – anyone with higher authority who authorized, tolerated or knowingly ignored those acts is liable for them.

S. Rep. 102-249 at 8-9 (footnote omitted). Thus, while a defendant need not have actually inflicted torture on a putative plaintiff to be liable under the TVPA, he or she must have authorized, assisted, or at least played some culpable role in the torture or extrajudicial killing. See Mohamad, 132 S. Ct. at 1709 ("[T]he TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing.");

---

[4] The TVPA was enacted in 1992. However, courts have held that it applies to conduct that occurred before that date. See Cabello v. Fernandez-Larios, 402 F.3d 1148, 1153-54 (11th Cir. 2005); Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189, 1196 (S.D.N.Y 1996); Xuncax v. Gramajo, 886 F. Supp. 162, 176-77 (D. Mass. 1995).

4

see also Cabello v. Fernandez-Larios, 402 F.3d 1148, 1157 (11th Cir. 2005) (the TVPA "reach[es] beyond the person who actually committed the acts, to those ordering, abetting, or assisting in the violation").

Here, the amended complaint names as defendants the current Solicitor General and Secretary for Justice of Malawi. However, it does not explain how those individuals are at all responsible for the torture inflicted upon plaintiff from 1969 through 1977. To the contrary, it appears that plaintiff seeks to hold those individuals responsible for what happened to him either because they have ignored and/or failed to ensure that he receives relief on his claim for compensation, or because they are current government officials of a country where he previously suffered harm under a different regime. See Mhango v. I.N.S., No. 96-70456, 1997 WL 753606, at *1 (9th Cir. Dec. 4, 1997) (observing that the Malawi Youth Pioneers "was disarmed by the army in early 1994"); U.S. Relations With Malawi, Bureau of African Affairs Fact Sheet, at http://www.state.gov/r/pa/ei/bgn/7231.htm (Dec. 17, 2012) (reflecting that Malawi was under one-party rule from 1966 to 1994, when it transitioned to a multi-party democracy); (Am. Compl., Dec. 5, 1997 letter from plaintiff to the Administrator of the National Compensation Tribunal (explaining that plaintiff was "victimized by the former government, ruled by the Malawi Congress Party (MCP) under the leadership of Kamuzu Band[a]").) Neither of those grounds establishes that the current Solicitor General and Secretary for Justice of Malawi ordered or

participated in plaintiff's torture or his wife's murder. Thus, plaintiff has not stated a claim against the named defendants.[5]

A district court should generally provide a pro se plaintiff with leave to amend unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). Plaintiff has already been given an opportunity to file an amended complaint, but the facts alleged, while unfortunate, do not establish a basis for a claim against the named defendants. Nevertheless, plaintiff will be given one more opportunity to amend his complaint in the event that he can state a claim against a defendant who would be liable to him under the TVPA.

### IV. CONCLUSION

Based on the above, plaintiff's amended complaint is dismissed without prejudice to his filing a second amended complaint. An appropriate order follows.

---

[5] Plaintiff asserts that the Solicitor General and Secretary for Justice are responsible for the acts alleged in the complaint pursuant to Kiobel v. Royal Dutch Petroleum Co. At issue in Kiobel is (1) whether corporations are subject to tort liability for violations of the law of nations under the Alien Tort Statute ("ATS"), and (2) whether and under what circumstances the ATS provides a cause of action for violations of the law of nations occurring within territory of a sovereign other than the United States. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 117 (2d Cir. 2010), cert. granted, 132 S. Ct. 472, calendared for reargument, 132 S. Ct. 1738. That decision is inapplicable here because plaintiff is a citizen and, thus, has no claim under the ATS. Id. at 116 ("[T]he ATS provides jurisdiction over (1) tort actions, (2) brought by aliens (only), (3) for violations of the law of nations."); see also Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1344 (11th Cir. 2011) (same); (Compl. ¶ II.C. (reflecting that plaintiff is a U.S. citizen).) In any event, plaintiff has not sued any corporations in this case.

6

3/12/13 mad:
/Cafuturn